And fair warning, some of us have iPads up here where we can check your record site, so please be accurate in your statements about the record. I know you will be. All right. Without further ado, let's begin with Case No. 17-50445, United States v. Wiese. And we'll begin with Mr. Bogan. May it please the Court, Brad Bogan for Eddie Ray Wiese. Mr. Wiese is serving an unconstitutional sentence in light of the Supreme Court's decision in Johnson v. United States. In 2003, Wiese was convicted of being a felon in possession of a firearm, and the penalty range for that offense is usually 0 to 10 years imprisonment and up to 3 years of supervised release. But under the Armed Career Criminal Act, the penalty range increases to 15 years imprisonment to life and up to 5 years supervised release. A defendant qualifies for an enhancement under the ACCA if he has at least three prior convictions for a serious drug offense, a violent felony, or a combination of both. Now, in Wiese's case, his enhancement was based on one drug offense and multiple Texas burglary convictions. The burglary— is not a successive case, and the government has actually conceded that if Harold lives, they lose. Is that a fair summary of that case? That's correct, although argument was canceled in Stewart, so it was not argued yesterday. Okay. Thank you for that. I didn't check that. And then Campbell, which is set for tomorrow, I presume still on, is a successive case that originally involved robbery but that now also has added burglary. And so it does have the same jurisdictional issue that we have. Yes. Okay. All right. With that, I think that's the issue, isn't it, the jurisdictional issue? In the Stewart case, the government conceded, but in this case, they're challenging jurisdiction on whether this really is a Johnson case. Yes, that's correct. Okay. Why is it a Johnson case? It's a Johnson case because Wiese's claim relies on the new retroactive rule that was announced in Johnson. Under the relevant statutory provisions in 2255 and 2254, a defendant has to show, at least a defendant who is in a successor posture, has to show that his claim, quote, relies on the new rule of consequence. How do we know whether the sentencing judge relied on the enumerated clause or the residual clause? Well, it shouldn't matter whether the judge at the time of sentencing relied on one clause or the other or both, because at the time of sentencing, there was no legal requirement for the judge to make that finding. All that was necessary is that there were a sufficient number of convictions that qualified as a serious drug offense or, in this case, a violent felony under any provision. Okay. But there's no circuit that has adopted the don't matter rule. The circuits have said either if it was the factor, in other words, they didn't rely on enumerated but relied on residual or, you know, kind of more likely than not did, but there's nobody that said we don't care as long as you could make a Johnson argument, however frivolous, then Johnson controls. Well, that goes to an additional dispute among the circuits, and that is whether a district court at this point in time looks to the law as it existed at the time of sentencing and what the basis for enhancement might have been at that time versus the laws that exist now. And even courts that say, some of the courts that say a defendant has to show that he was sentenced under the residual clause allow a defendant to rely on current law, which, as relevant to this case, would be the Supreme Court. How does that even make sense? I mean, the whole concept of successive habeas is very limited, and so Johnson is retroactively blah, blah, blah, but it's limited to Johnson, the residual clause. If we know, I mean, let's say that the judge happened to announce in 2003, just happened to say, you know, burglary enumerated offense, so I'm going to sentence you, just happened to say that. Why wouldn't we give credit to that and move on? Why would we be then going, well, but could have, you know, somewhere in the back of his head thought about the residual clause, and therefore we ought to make it a Johnson case? Because the relevant question is whether his sentence still stands under the ACCA in light of Johnson. And the Fourth Circuit's decision in Winston talks about this situation where a claim relies not only on Johnson but on case law developments subsequent to the defendant's original sentencing. And there are two separate questions involved. One is the gatekeeping question of whether the successor defendant can show that his claim relies on the new rule, which in this case is Johnson. But as Winston said, it's not necessary that the claim rely solely on that new rule. As to the question of the current legal landscape, that goes to the question of whether there was harm from the error in the sentence. And so the question is, in light of Johnson, does WESA still qualify as an armed career criminal? And the answer is no, because without the residual clause, his burglary offenses categorically are not ACCA violent felonies. At the time of sentencing, the enumerated clause was a violent felony, wasn't it? You could find a violent felony based on the enumerated clause. Burglary was a generic burglary. Not necessarily. In 2003 went to sentencing. Well, in 2003 we had this Court's decision in Silva, which had been decided in 1992, and that held that a Texas burglary under subsection A-1 of the burglary statute is generic burglary. But there's another subsection of the statute, A-3, which does not require contemporaneous intent to commit another entry, another offense. Right. But back then you could narrow. You didn't have the additional layer of complexity that Mathis has brought us. And so you look to the modified categorical, you look to the papers, and he clearly was convicted under A-1, and that's what the Court looked at. So why, I mean, to me the problem is, I agree, if you get past the Johnson hurdle and Harold survives, you win. But those are two, the first one being the biggest hurdle. I just am having trouble with how this is a Johnson case. I understand how it sort of warranted a COA. I mean, let's talk about it. Yes, I think that's fair that we should be talking about it. But why, I just am still having trouble with, if we go back in time to the time of sentencing, which is, to me, the relevant period for the Johnson question, we wouldn't have been talking about the residual clause in 2003. So why should you get to talk about it now, when Mathis is not retroactive and Harold certainly isn't because it's not even a Supreme Court case? Well, that's exactly why there's a problem with the original sentence, because Mathis did not say anything new. It's not just that it's not a new rule of constitutional law. What Mathis said is, here's what we said in Taylor, and we've meant that all along. And Taylor was decided in 1990 and laid out how the categorical approach operates. Taylor also acknowledged that it's possible for an offense not to qualify as generic burglary, but to still potentially be a violent felony under the residual clause. So that possibility was out there at the time, and at the time Wiesa was sentenced, there were decisions from this Court involving the materially identical residual clause in 18 U.S.C. Section 16b, and holding that burglary, and in particular Texas burglary, does qualify under that residual clause. So when Wiesa was sentenced, his burglary convictions could have been violent felonies either under the enumerated offenses clause, although we now know that that would have been incorrect, or under the residual clause. And when it's possible that they could have, that the district court could have arrested the enhancement on the residual clause, then Wiesa passes through the 2244 gate, as the Fourth Circuit recognized in Winston, and the court can, the district court can proceed to address the claim on the merits. And then, of course, there's the separate prejudice, harm question, of whether after Johnson and looking at current law, he still qualifies as an armed career criminal. And another point I would make is that although some courts have drawn a distinction between defendants who are in an initial 2255 posture versus a successor posture in terms of being able to rely on current law, there's no obvious reason why that should be the case, and there's nothing in the text of 2244 or 2255 that would support any distinction between initials and successors. The only difference is that successors have to show that their claim relies on this new retroactive rule. Well, I mean, I think that's why Stewart didn't have the jurisdictional issue and why the government made the concession it did, that if Harold lives, we die, or whatever the concession is, because to me the jurisdictional issue is the whole case here, absent the Supreme Court doing something different with Harold. Well, there was a jurisdictional issue in Stewart. It's just a jurisdictional issue under a separate statutory provision. Well, I didn't see it briefed. I mean, what I saw was the government said, and I didn't study it in the detail that I've studied this case, obviously, but glancing at it, they kind of waxed eloquent about Harold and then said, but, you know, if Harold lives, we concede. So that was how I saw it. The word jurisdiction was mentioned only at the very beginning. I mean, I searched for it because I was looking to see what the issue was. Now, as I said, you've probably studied it more than I have. I certainly have not studied it to the depth that I've studied this case, but it didn't seem like it presented the same jurisdictional question. Well, I can't explain why the government didn't address that or raise that as a possible bar in Stewart. I represent Mr. Stewart, and I've read the government's reading. Oh, I didn't notice that. Okay. So you are very familiar with it, much more so than me. Right. But the jurisdictional issue that Harold or, excuse me, Stewart would have had to deal with is the provision in 2255H2, which requires a defendant, excuse me, I take that back. That's for success. He would have had a limitations issue, which is not. Well, there's also that, yes. Yeah. But what would be the jurisdictional issue? In other words, if he had filed that, we had a lot of Johnson filings within a year kind of stuff as soon as Welch came out. I mean, it was just we were flooded with that. There wasn't any jurisdictional issue there. They were just trying to make sure they met the time, the year time. Your Mr. Stewart, I guess, is some time ago, so there would be a timing issue, but that's not a jurisdictional issue. Well, there would still be a jurisdictional issue with whether Stewart or Wiesa could bring a claim in the first place based on the criteria in 2255A, which lays out the 2255 motion as pertinent here that the sentence was imposed in violation of the Constitution of the United States or that the sentence was in excess of the maximum. So then there's that separate timeliness question of if more than one year has elapsed from the defendant's conviction becoming final, then he can only bring a claim if it's based on a new rule of constitutional law that is retroactive. Counsel, in contrast to the jurisdictional provision that you just read, the relevant jurisdictional provision in this case, how does it read? It requires that the defendant show that his claim relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously out of it. So whose burden of proof is it to show that reliance? It's the defendant's, and in terms of what burden that is, it's purely a legal question. Well, it's your burden, right? Yes. So what do you have to show? If you have the burden, it suggests that you have to show something. So what would you point to to show that your claim relies on materials? That Wiese's ACCA sentence was based on one drug offense and multiple Texas burglary convictions, that without those burglary convictions, the ACCA enhancement cannot be sustained, and in light of Johnson, the burglary convictions categorically are not ACCA violent felonies because Johnson eliminated the residual clause as a basis for that, and we know based on Herald that Texas burglary can't be eliminated. I understand. But by pointing to what you just pointed to, does that satisfy your burden of proof to show that the claim relies on the residual clause, or is it just, could it be either residual clause or the enumerated clause? Let's suggest one or the other. The claim has to rely on the new rule, and as the Fourth Circuit recognized in Winston, it's not necessary that the claim rely exclusively on that new rule. It's enough that the new rule is necessary to support the claim, and the easiest way to see that is without Johnson, Wiese doesn't have a claim, and if Wiese were being sentenced today, he could not receive an ACCA enhancement. Let me ask you about the pre-sentence report simply itemized the burglaries and the drug offense, but it made the point that the burglaries and each burglary offense, it was a burglary of a habitation, and it made the point that the burglary was committed, that the defendant entered a building with intent to commit a felony, both of which were involved in some of our earlier cases as to whether those requirements were, those elements were necessary for an enumerated offense of burglary. Doesn't that sound like it's, that at least the PSR, which the district court adopted, is pointing toward the enumerated offense? It suggests that it could have been based on the enumerated offenses clause, but that's not necessarily true. The record is entirely silent on, quote, the precise basis for treating the burglaries as violent felonies. Well, the judge did adopt the PSR, and there's no analysis in the PSR about the residual clause. Well, there's no analysis about the enumerated offenses clause either. Well, you've got those two elements that he specifically names that is essential for it to be an enumerated clause. Well, except that the probation officer did not say the burglaries qualify as violent that was included with most of the burglary conditions. Well, wouldn't you concede that's some evidence, though, that at least the probation officer was looking at the enumerated offense? The probation officer could have been, but it's also the case that given the state of the law at the time, burglary also qualified as a residual clause offense. And, in fact, given the fact that some forms of Texas burglary are not generic burglary, the residual clause would have been a more solid basis on which to rest the ACCA enhancement at that time. But, again, the record just isn't clear on that point. Is your argument preferring the Fourth Circuit standard, the may have standard, does that require us to analogize this kind of case to sort of a, I forget, is it a Stromberg case where the basis for a jury's verdict are unclear, so we have to give the benefit of the doubt to the defendant? Is that part of the argument? Because you're implicitly asking us to prefer that Fourth Circuit standard, right? That's why you keep bringing up Winston. Yes. I think the Fourth Circuit is most faithful to the text of the statute. Does it rely on that analogy? I remember that came up in a case somewhere, but I'm not aware. I know that the Ninth Circuit's decision in Gyozo specifically refers to the Stromberg. Is that the same standard as the Fourth Circuit? What I'm trying to get at is, you know, we don't want you to throw the circuits up in the air and say, well, the Fourth looks good. You have to have a reason for preferring one over the other, right? There's evidently a divergence in approach. Would you agree with that? I would say that the Fourth Circuit's approach is consistent with a Stromberg analogy. Would you agree that there's a divergence in approach among the circuits on this? Oh, absolutely, yes. And, you know, in Taylor, this Court canvassed the circuits and said we need not decide which, if any, to follow. But we haven't taken a position, so we have to take a position. We may have to take a position, perhaps. Right. So I'm just trying to get at what? Oh, I'm sorry. No, go ahead. I'm just trying to get at how do we do that. But that's fine. That's good. You answered my question. You want us to do it in a way that helps your client. We appreciate that. And you've reserved time for rebuttal. Thank you. It's usually the case. All right. Mr. Director. May it please the Court. If we follow Winston, do you lose? I don't think so, Your Honor. We believe we would win under either alternative in this situation because both the Fourth Circuit's decision in Winston and the Ninth Circuit's decision in Giozo's require that an inmate prove or show that the sentence was some way based on the or may have been based on the residual clause of ACCA. This inmate can't make that showing because every piece of precedent, this Court's precedent uniformly pointed to the enumerated offenses clause at the time that this defendant was sentenced. Plus the PSR that Judge Davis read from. That's right. The PSR makes clear, as Judge Davis indicated, that these were burglaries under the subsection of the Texas Burglary Statute that was considered an enumerated offense. It wasn't until after this sentencing occurred that this Court began to distinguish among different subsections of the Texas Burglary Code. And when this Court did that, then there was some disarray about whether a separate subsection of the Texas Burglary Code might qualify under the residual clause. And there's nothing about remaining in in this case. That's right. Because there are far more than the three burglaries that we need here that would have qualified under A-1. They were all burglaries where the intent was formed at the time of entry according to both the PSR. And then if you look at what are called the Shepard documents, the underlying State court documents which are now in the record, that confirms that these are A-1 type burglaries. This case is exactly why the very careful and thorough dissenting opinion in Herald was written. But we will talk about that. So back to the matter at hand. In these other two cases, I went over them with your opponent, we have in Campbell, is it possible that Campbell, while presenting a similar issue of successive and burglary, could come out differently if the PSR reads differently? I'm not sure what the Campbell PSR says, but I think Campbell is potentially different because there are four underlying convictions at issue there. Two are burglary and two are robbery. And robbery has also been implicated by this Court's recent precedent. So there is potential there for this case to be different from Campbell. Right. But, I mean, because they could say, well, robbery is in a violent felony, we don't reach burglary. But if they reach burglary, it's a similar issue. But the interchange on the PSR got me thinking. Like, let's say, and I haven't looked, I didn't dig into these other two cases. I have enough with my own cases. But let's say the PSR made some reference to remaining in in Campbell, just hypothetically. It said that. That case could then possibly come out differently than this case. I believe it would depend on potentially exactly when Mr. Campbell was sentenced, because all of the circuits except potentially the Fourth, although the Fourth Circuit's decision is somewhat murky, look to the legal background at the time of the sentencing. Even the Ninth Circuit's case, Giosis, which is the one that refers to the Stromberg principle, all of that case even refers to the law at the time of sentencing. And the law at the time of this inmate's sentencing in 2003, again, pointed uniformly to the enumerated offenses clause. So the remaining in situation didn't happen until, like, 2008, where remaining in became a bit of a goo. That's right. That happened in Constante. And even in this Court's decision in Constante, the government hadn't even argued in that case that the residual clause might apply. That debate about whether the residual clause might apply to a different provision, the remaining in provision of the Texas burglary statute, didn't take place until later. And then it was the product, it was the subject of competing, conflicting decisions and published decisions by this Court. So even that subsection of the Texas burglary code, it was not clear whether that would fit under the residual clause. And in this case, because we had burglaries that were clearly under A-1 of the Texas statute, there would be no reason for the district court, for anyone, to look beyond that. Sotomayor. That's right. It would have been very unusual for the district court to have even thought about the residual clause because this Court's precedent was clear at the time. And the topic of Section 16, 18 U.S.C. Section 16, came up during the opening argument. But this Court in United States v. Charles on Bonk looked at provisions, looked at Section 16 and then looked at a provision of the sentencing guidelines that's identical virtually to the ACCA residual clause that we're talking about here. And this Court said in Charles that you can't mix the precedent from those two texts, that because those texts are different in important ways, you actually have to look to the precedent under ACCA. And the precedent under ACCA was the United States v. Silva case that said that Texas burglary there under A-1 was an offense under the enumerated offenses clause. Okay. So your position is that even under a may have taking Winston and if we were to adopt Winston or assume arguendo Winston, you would still win because your argument is there's really no basis to conclude the residual clause played any role back then. That's correct, Your Honor. And, of course, we would prefer that this Court choose the majorities test, but there's no need to decide. Just as there was no need to decide in United States v. Taylor, there's no need to decide in this case. But we do think that the majority of circuits test is the superior test based on the text structure and purpose of AEDPA, as well as the tradition of presumption of finality and the traditional burden that applies to habeas petitioners. The Stewart case, would you agree that that is just a really different case because it's an initial habeas and the portion of 2255A that counsel opposite read actually kind of left out or any other reason to collaterally attack. So on an initial habeas, you have a much broader ability to attack a prior judgment than you do on a successive. Is that a fair statement? That's right. The nub of this case is the gatekeeping requirement that an inmate show that a claim relies on the new rule of constitutional law. And this inmate says not because when this inmate was sentenced, of course, his sentence hinged on a statute of provision different from that addressed by the new rule in Johnston. And if we conclude that his current habeas doesn't rely on Johnston because his prior sentence had nothing to do with the residual clause, we have to stop at that point. That's right. We have no jurisdiction anymore, and we just have to say, because it is a little bit of a weird situation, because if you peek in the last chapter of the book, you know that if we did apply Herald here, if we just threw out all the other, you know, he wins and he's out of prison today. We're close to it. And that's a feature. Is that right? That's right, Your Honor. Okay. But that's a feature. So that's kind of a tough one to, I mean, apply the laws it's given to me, and I'm fine with that. But, you know, you can see how that's a little bit disturbing to your opposing counsel and Mr. Wiesa. That's simply a feature, Your Honor, of the limits that Congress set in AEDPA for successive petitions. Congress drew a balance between the interest that the system has in finality, that defendants have in finality, and the interest in correcting sentences that under subsequent law may turn out different if the defendant were sentenced today. And when Congress drew that balance, it created this provision that requires that a successive petition rely on a new rule of constitutional law. And so that's the law that we're applying here. And that limit that Congress drew affects all sorts of defendants and prevents courts from going back and looking back at sentences all the time. Otherwise, you would have the flood that you had when Welch was decided perpetually because defendants. You had a lot of floods. I'm sure that's true. I spoke earlier about the text structure and purpose of AEDPA. We talked a little bit about the relies on language, which according to every dictionary means depends on. And so the claim actually has to depend on a new rule of constitutional law and not just identify a new rule of constitutional law. And if you look then to the structure of the provisions we're talking about in AEDPA, you'll recall that this court looks prima facie at whether there's some fighting issue that would pass the inmate through AEDPA's gates when this court certifies that the second or successive petition can go forward. That's a preliminary review because this court is limited in time, and this court doesn't look as closely as the district court is expected to later. If looking, if it relies on just that you had to identify some new rule of constitutional law, then the district court's inquiry, which is a separate inquiry under the statute, would be virtually the same as this court's initial inquiry. And then if you look at the purpose of AEDPA that we touched on earlier, the purpose of AEDPA was to promote finality and to create an intentionally high bar for second or successive petitions. So for all those reasons, we believe the majorities approach that requires a defendant to show that a sentence actually hinged on the residual clause as opposed to the enumerated offenses clause is the superior approach here. Okay. So let's talk a little bit about you also argue that if we somehow get past all of this stuff and say it does rely on it or whatever and we get to the merits, we've got Herald. And obviously under Herald, you lose and they win, but then we've got the fact that Herald has a pending cert. We know some aspects of this whole, you know, what is burglary have already obtained cert, not the remaining in issue, but the vehicle issue, which the en banc court didn't decide, at least the en banc majority didn't decide. So your argument is that even if we get there, we should stay at pending Herald. But the thing is, then we've got a person who's sitting in prison who maybe shouldn't be there if we get, if we apply Herald today, shouldn't be there. So how can you really argue for a stay in that situation? The purpose of asking for a stay is to make crystal clear that we believe that the case should be over if for some reason this court gets past the jurisdictional argument. Now, we think the easier decision here, although it's complicated, is the jurisdictional argument, and that would resolve the case immediately without having to get to Herald, as you mentioned. But in terms of the stay, the Department's position has been that we should ask for stays in each of these cases to make clear that we're not conceding on Herald's ground at all. Can I ask you the physics of that? I haven't looked at exactly how much longer Mr. Wiesa has, but let's say he has another two years of the existing sentence, that if we did nothing, he'd spend another two years. Let's say that we got past the jurisdictional issue in his favor and we applied Herald and said, you know, you're out, essentially, and he got out. And then the Supreme Court takes Herald and reverses it. Let's say all of that happened. That's a lot of if, if, if, if. But if all of that happened, can he be put back in for the remaining two years, or is there something that would prevent that, assuming you kept this case alive by, you know, petitioning for cert or whatever you'd need to do? With all those eventualities, yes, the government would have the option of having the sentence reinstated and having this inmate or defendant put back in prison for the remainder of his sentence. So that would be an option that the government has. The government doesn't have to exercise that option, but it would be an option. And in terms of just the facts on the ground, yes, the release date currently is just a little bit less than two years out. So that's about the correct amount of time that he still has left to serve. But the stay, like I said, is mostly to make sure that this court understands that we don't concede on Herald. And we do think that the jurisdictional question is the dispositive issue here. I also just wanted to make clear that under, I'm sorry, under the majority rule, it's not good enough to say that something could have been under the residual clause. And on that point, I'd point this court to the Seventh Circuit's decision in hold, which explains why if the sentence could have been based or was based on the enumerated offenses clause, but just hypothetically could have been based on the residual clause, that that's not sufficient for an inmate to carry his or her burden. Can we try to – I'm trying to get in a sense, because we talked a little bit about burden of proof earlier. The majority view of this, the burden of proof, is more likely than not. And would the Fourth Circuit approach be sort of probable cause? Or what – I'm trying to put in my head, like, how much – because I just think being able to say, well, Johnson has sort of – is in the same law book with this case is not even going to satisfy the Fourth Circuit. So I'm just trying to, in my head, conceptualize what hump does Mr. Wiesa have to jump over if we take the lowest hump? What is that like? And how do we characterize that, you know? Do you understand the question? I think I do. I hope I do. The language that the Fourth Circuit and Ninth Circuit have used is that a sentence may have been based on the residual clause. And the Fourth Circuit and the Ninth Circuit haven't expanded on the may have test, whether that's – but we would agree that it has to be somewhat more than some hypothetical remote possibility. There has to be a realistic probability that the sentence would have relied on the residual clause. And this inmates doesn't, because everything in the law books at the time would have pointed to the enumerated offenses clause. That would have been a clear and easy decision for the district court to make in this case. But we don't know exactly what the Fourth and Ninth Circuit mean, because they haven't expanded. And those are, to be fair, the two earliest cases in this line of circuit cases. They were the first two circuits to kind of address this. And subsequent circuits have expanded on – That's right. And identified some potential flaws in the Fourth Circuit's and Ninth Circuit's test. And the Fourth Circuit doesn't actually rely on the strong group principle. But what the Fourth Circuit was concerned about was that different defendants would be treated differently, depending on what the district court had said. But as it turns out, that's not a real concern, because an inmate can always look to the legal background at the time, as this inmate could, and point to the prevailing precedent at the time. That doesn't help this inmate in this case. But it means that two inmates with similar convictions would have similar results, because no matter what the district court said, because they could look to the legal background. So if we had a bunch of conflicting, let's say unpublished opinions back in 2003 about whether it is enumerated or it's a residual or it's this or it's that, and we were just kind of – we, the Fifth Circuit, were sort of all over the place, that could be a may-have scenario for somebody. That might be a closer question under the Fourth Circuit's test or the Ninth Circuit's test. It wouldn't operate – it wouldn't work under the majority's test. That's subjective on the majority test. Well, it's more likely than not. And several of those – most of the courts in that majority say that it must – the sentence must have been based solely on the residual clause. And it was not – it could not have been based on the enumerated defenses clause. So, yeah, if you – yes, if you were under the Fourth Circuit's or the Ninth Circuit's test and you had all this conflicting precedent and unpublished decisions, then you might get over the may-have hump. But that's not the situation we have here. We didn't have any of that conflicting precedent at the time this defendant was sentenced, and the conflicting precedent was under a different provision of the Texas burglary statute. So you don't have that problem. I think we've already addressed some of the problems with the Ninth Circuit's test looking to jury verdicts. You know, so he made an argument about Mathis really just being kind of what the law always was. And I guess we can debate that. The Supreme Court articulated such a concept. I'm not sure the circuit courts had seen it quite that way. But the law that the en banc majority relied on in Herald for the determination that the Texas statute is not divisible under Mathis, was that extant in 2003? I haven't gone back. I just thought of that question, so I haven't gone back to look. And that may be an unfair question to you. I just don't remember the, you know, the cases that the en banc majority relied on from Texas. Do you remember when those were? The Supreme Court, if I understand your question, the Supreme Court in Mathis and DeCamp said that it was only applying principles that it had applied before. And that's why we say that an attack on a sentence that was based on the enumerated offenses clause that would be affected by Mathis and DeCamp can't possibly rely on a new rule of constitutional law. No, it's not a new rule of constitutional law, and we've said that in Ray Lott. My question is more that I guess he's arguing we got the divisibility analysis wrong in 2003, and if we'd gotten it right, we would have been where he is today on that. I believe that the argument would have to be that this Court got the divisibility analysis wrong in 2008 or 2007, four or five years after this defendant was sentenced. At the time this defendant was sentenced, this Court had not distinguished among the different subsections. And we hadn't said remaining in wasn't generic. That's right. That was a question. So your point is it really doesn't matter whether the divisibility divides us or not. That's right. It wasn't until Constante that that issue ever arose. And even after Constante, Constante did not undermine Silva's decision that subsection A-1, which all of this defendant's. No, I get all that. Okay. It's hard to kind of take a reverse crystal ball. That's right. Okay. So we would have urged the Court to affirm the district court. Thank you. All right. Mr. Bogan. I'd like to address the government's argument concerning the purposes of the AEDPA and these concerns about finality. The government's position drawing this distinction between initial 2255s and successor 2255s in terms of what the reliance showing is, what the required reliance showing is, only makes sense if the purpose of the AEDPA is to punish successors simply by virtue of the fact that they're in a successor posture. That's not the purpose of the AEDPA. The purpose was to prevent abuse of the process and to prevent defendants from filing serial frivolous 2255s. And that's why there are all these additional hoops that successors have to jump through. But that doesn't mean that just because somebody. I don't know that they had to be serial frivolous. I think they just had to be serial. Well, either way, the purpose was to. Because you wouldn't need as high a hump as they got if you just were worried about frivolous. Well, either way, the purpose was to cut down on litigation. Yes. But here you have a decision from the Supreme Court of the United States recognizing a constitutional flaw in the statute under which Wiesa was sentenced, and the Supreme Court acted quickly to make that rule retroactive. Yeah, but actually the main thing you're relying on is not a Supreme Court decision, which is Harold. Without Harold, if we were still under Uribe, you wouldn't be standing here. Well, that's the same case for Stewart. And that's why this supposed distinction between initials and successors, given the government's position in Stewart, doesn't make any sense. Stewart's claim is indistinguishable from Wiesa's. No, because if you read 2255a, which you read to us, the initial attack is on constitutionality is only one thing you can attack. You can also attack excessiveness of the sentence. And it's excessive now under Harold. There's nothing here about as determined by the Supreme Court or anything like that, nothing about where the Supreme Court is the decider of what's excessive. So if let's say there was a we get these in restitution cases where they say you prescribe more than the required restitution, that's in excess of the maximum. That's the argument made. We apply circuit case law on that. Nobody suggests otherwise. And that would be appropriate on habeas. It says that the court was without jurisdiction or that the sentence was in excess of the maximum authorized by law. And that's the argument he's making. He doesn't have to jump through a hoop to make that argument. Except that Stewart cannot prevail without Johnson. If Harold was the only decision out there for Stewart to rely on, he wouldn't have a claim because Harold is not itself retroactive. So Stewart and Wiesa both have to be retroactive. If he's on an initial habeas. Because he's more than one year out from when his. That's a limitations question which isn't jurisdictional. Well, but at root it's the same question. What is the claim here? Stewart's claim and Wiesa's claim are identical. And it is that in light of Johnson, they no longer qualify as armed career criminals because their burglary convictions are categorically not generic burglary and the residual clause is no longer an alternative basis to treat them as violent felonies. And as for these finality concerns, the Supreme Court in Welch, which made Johnson retroactive, recognized that finality concerns are at their weakest when you have a defendant sentenced under an unconstitutional statute. And the Supreme Court has already addressed the finality concerns in this context by making the rule in Johnson retroactive. And I guess just one final point before my time runs out. Judge Haynes, to your question as to what the majority in Herald relied on as far as the landscape of Texas law and when that happened, the earliest case I believe is Day, which is from the 1970s, from the Texas Court of Criminal Appeals. I just look at that as a lot of other cases. But there was a court of appeal, an intermediate court of appeals decision that factored very largely in the majority opinion. I think that was later. Well, there's Martinez, which was I think 2008, just looking right now. Yeah, there was an Austin court of appeals case. It might have been. Yeah, that was a big. I'll go back and look. I mean, it was an unfair question. I expect you all to memorize Herald. But I'll go back and look. But anyway, thank you. Thank you. Appreciate both sides' arguments, and the case is under submission.